# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-2192

BARNEY J. STEFL, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      March 27, 2007  )

*Mark R. Lippman*, of La Jolla, California, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and LANCE, *Judges*.

LANCE, *Judge*, filed the opinion of the Court.  GREENE, *Chief Judge*, filed a dissenting opinion.

LANCE, *Judge*: Barney J. Stefl appeals through counsel an October 8, 2004, decision of the Board of Veterans' Appeals (Board) that denied his claims for service connection for atypical squamous metaplasia (nasal sinus disease).  Record (R.) at 1-15.  For the reasons that follow, the Court will vacate the October 8, 2004, decision and remand the matter for further proceedings consistent with this decision.

## I.  FACTS

The appellant served on active duty in the U.S. Army from September 1967 to September 1969, during which time he served in Vietnam.  R. at 17.  There is no record that during service the appellant complained of, or underwent treatment for, nasal or sinus conditions.  A November 1997 pathology report diagnosed him with allergic-type respiratory polyps.  R. at 99.  In November 1997

and January 1998, he underwent surgery to excise intranasal polyps and ethmoid sinus tissue. R. at 96-102. In March 1998, the appellant filed a claim for service connection for nasal sinus disease based on exposure to herbicide agents or tobacco use that began during service. R. at 104, 113. The appellant's condition is not one presumptively caused by exposure to herbicide agents under 38 C.F.R. § 3.309(3) (2006). Appellant's Brief (Br.) at 5. The New York, New York, VA regional office (RO) denied his claim in March 1998. The RO noted that "VA has determined that presumption of service connection based on exposure to herbicides used in Vietnam is not warranted for any conditions other than those for which VA has found a positive association between the condition and such exposure." R. at 107-09. The RO then went on to find: "There is no basis in the available evidence of record to establish service connection for nasal sinus disease due to exposure to herbicides." *Id*. In September 1998, the RO denied service connection as secondary to tobacco use. R. at 126-27. On January 4, 2000, Frank L. Staro, M.D., wrote a letter saying the appellant's "ethmoid polyps . . . showed atypia which we related to Agent Orange Exposure in Vietnam." R. at 145.

In January 2001, the Board remanded the matter for further development finding 38 U.S.C. § 1103 did not a bar the appellant's theory of service connection based on tobacco use because the section applied only to claims filed after June 9, 1998, and the RO received the appellant's claim in March 1998. R. at 167-74. The appellant underwent a VA medical examination in March 2003. R. at 338. The physician concluded:

> Upon reviewing the veteran's [claims file], there is a [S]tatement of the [C]ase dated September 2, 1998[,] in which there are listed diseases associated with exposure to certain herbicide agents. In that disease list, nasal sinus disease is not among the disorders. There [are] listed respiratory cancers, cancers of the lung, bronchus, larynx and trachea. Nasal polyps and nasal polyps that show atypical squamous metaplasia certainly do[] not fall into the realm of an obvious malignancy of the respiratory tract. It is therefore my opinion that the veteran's nasal and sinus polyp disease is not related to service or exposure to Agent Orange.

*Id*. Based significantly on this medical opinion, the Cleveland, Ohio, RO (R. at 389-406) and the Board (R. at 1-15) denied the appellant service connection for his nasal sinus condition. This appeal follows.

2

## II. ANALYSIS

Service connection is available for disabilities caused by service:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled . . . compensation as provided in this subchapter . . . .

38 U.S.C. § 1110. Service connection can be established directly with medical evidence of a nexus between a condition and an injury or disease in service or, in some instances, can be established by a presumption that certain conditions are related to certain types of service. *Combee v. Brown*, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994). For veterans who served in Vietnam, Congress directed the Secretary of Veterans Affairs (Secretary) to consider reports from the National Academy of Sciences and "all other sound medical and scientific information and analyses available to the Secretary" (38 U.S.C. § 1116(b)(2)) and prescribe regulations providing for presumptive service connection for conditions where a positive association exists between exposure to herbicide agents and the occurrence of the disease in humans (38 U.S.C. § 1116(b)(1)). Service connection is available for these conditions without a claimant's showing a nexus between service and the condition.

> Whenever the Secretary determines, on the basis of sound medical and scientific evidence, that a positive association exists between (A) the exposure of humans to an herbicide agent, and (B) the occurrence of a disease in humans, the Secretary shall prescribe regulations providing that a presumption of service connection is warranted for that disease for the purposes of this section.

38 U.S.C. § 1116(b)(1). The list of conditions is found at 38 C.F.R. § 3.309(e). The Secretary has also established that "any other condition for which the Secretary has not specifically determined a presumption of service connection is warranted" is not entitled to a presumption of service connection for exposure to herbicides. 68 Fed. Reg. 27,630 (May 20, 2003).

Pursuant to 38 U.S.C. § 5103A, the Secretary's duty to assist includes "providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim." This duty includes providing an examination that is adequate for rating purposes. *See* 38 C.F.R. § 4.2 (2006); *see also Stegall v. West*, 11 Vet.App. 268, 270-71 (1998) (remanding where a VA examination was "inadequate for evaluation purposes"). In January 2001, the Board remanded the appellant's claim for a medical opinion "whether it is at least as likely

as not that any nasal disability found to be present is etiologically related to the veteran's period of military service." R. at 172. VA provided the appellant a medical examination. R. at 385-87. The appellant asserts the examination is inadequate because it is based on a misunderstanding of the applicable law. Appellant's Br. at 4. "[T]he physician mistakenly assumed that, since the appellant's nasal sinus disease was not included in the list of presumptive service connected diseases, it could not be related to service." Appellant's Br. at 5. The Secretary contends the examination is adequate, asserting reading the examination as a whole shows the physician considered the usual causes of the condition, the conditions normally caused by herbicide exposure, and opined the veteran's condition was not related to herbicide exposure during service. Br. at 9. The Secretary concedes in his supplemental brief that the existence of presumptive service connection does not preclude direct service connection. Supplemental Br. at 3.

The Court agrees with the appellant that the examination report is inadequate. An opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one.'" *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (quoting *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991)). The Secretary acknowledges that direct service connection may be available. Supplemental Br. at 3. The existence of presumptive service connection for a condition based on exposure to Agent Orange presupposes that it is possible for medical evidence to prove such a link before the National Academy of Sciences recognizes a positive association. Indeed, section 1116(b)(1) requires a "positive association" for presumptive service connection to attach. 38 U.S.C. § 1116(b)(3) (defining "positive association"). The availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange. This is particularly important when there is an approximate balance of positive and negative evidence in an appellant's particular case because a claimant is entitled to the benefit of the doubt. 38 U.S.C. § 5107(b).

In this case, the medical examiner discussed presumptive service connection but did not, as directed by the January 2001 Board remand order (R. at 172), discuss whether it is as likely as not that exposure to herbicide agents, or smoking, directly caused the appellant's condition. R. at 337-

4

39. The Secretary concedes the opinion is less than clear: "The latter statement does not **necessarily** presuppose that because the disease is not in the list, *ergo* the veteran's illness cannot be related to service, as [the a]ppellant would have this [C]ourt think." Br. at 9 (italicized emphasis in original, bold emphasis added). Whether the examiner failed to consider direct service connection, or reported in a manner that was not clear enough to be understood, the report failed in its purpose. A medical nexus opinion finding a condition is not related to service *because* the condition is not entitled to presumptive service connection, without clearly considering direct service connection, is inadequate on its face. Without a medical opinion that clearly addresses the relevant facts and medical science, the Board is left to rely on its own lay opinion, which it is forbidden from doing. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) (holding that the Board may only consider independent medical evidence and may not substitute its own medical opinion.).

Not only must the medical opinion clearly consider direct service connection, it must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions. *See Tucker v. West,* 11 Vet.App. 369, 374 (1998) (vacatur and remand may be warranted where the Board has failed to provide an adequate statement of reasons or bases for its determinations). Relevant points that can be discussed in an examination report include, but are not limited to, why the examiner finds cited studies persuasive or unpersuasive, whether the veteran has other risk factors for developing the claimed condition, and whether the claimed condition has manifested itself in an unusual manner. *See Claiborne v. Nicholson*, 19 Vet.App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data); *Guerrieri v. Brown*, 4 Vet.App. 467, 470-71 (1993) (stating that "probative value of medical[-]opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches"). The disputed medical opinion has no such analysis even if it was an opinion on direct service connection. Therefore, the Court finds the medical opinion inadequate. Because the Board relied on an inadequate medical examination in support of its decision, the Court will vacate and remand the decision. *See Stegall*, 11 Vet.App. at 270-71; *Hicks v. Brown*, 8 Vet.App. 417, 422 (1995) (concluding that an inadequate medical evaluation frustrates judicial review).

Although our dissenting colleague would hold that the medical examiner adequately expressed an opinion on direct service connection through the statement "nasal and sinus polyp disease is not related to service or exposure to Agent Orange" (R. at 337-38), the medical opinion is at best a conclusion that fails to provide sufficient detail for the Board to make a fully informed evaluation of whether direct service connection is warranted. *See Ardison*, *supra*. The Board's reliance on an unsupported conclusion also hampers meaningful review by the Court. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Furthermore, the majority's opinion does not dictate how a medical opinion should be formulated. We merely provide an illustrative list of items that may be helpful for the Board to consider in making a fully informed determination of whether a medical opinion contains such sufficient information that it does not require the Board to exercise independent medical judgment. *See Colvin*, *supra*. We do not hold that this list is exclusive or that any of these items would be necessary to render a valid opinion. We hold only that a mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to the doctor's opinion.

Given that this matter is being remanded for further adjudication, and finding none of the other allegations of error could result in greater relief, the Court will not address the appellant's assertion that he was provided inadequate notice (Br. at 5-9). *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). On remand, the appellant is free to submit additional evidence and argument and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court). Should the Board rule against the appellant, he may present any allegations of error to this Court in a future appeal. *See Best, supra*.

6

## III.  CONCLUSION

Accordingly, the Board's October 8, 2004, decision is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this decision.


GREENE, *Chief Judge*, dissenting:  I respectfully dissent from the majority's view that the Board's reliance on the examiner's statement to deny direct service connection was clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Forcier v. Nicholson*, 19 Vet.App. 414, 421 (2006) (Board's assessment of credibility and weight to be given to medical evidence is finding of fact reviewed under "clearly erroneous" standard); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991).  The March 2003 VA examiner stated that he had reviewed the claims file, examined Mr. Stefl, performed a fiberoptic endoscopic examination, and concluded that Mr. Stefl's "nasal and sinus polyp disease is not related to service *or* exposure to Agent Orange."  R. at 337-38 (emphasis added).  I believe the first part of this statement reflects the examiner's opinion regarding direct service connection, while the second part relates to presumptive service connection.  The examiner further noted that Mr. Stefl's condition is not similar to respiratory cancers, which are presumed to be caused by herbicide agents and that his condition is usually caused by "recurring sinus infections and/or respiratory tract allergies."  R. at 338.  These medical findings provided the Board with a plausible basis for relying on the May 2003 VA medical examination to determine whether there was direct service connection.  *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990) (holding that when applying "clearly erroneous" standard, Board's finding supported by plausible basis may not be reversed even if Court would have weighed evidence differently).  Further, the majority's attempt to dictate to the medical examiner how a medical opinion should be formulated stretches the boundaries of our review.  The Court has jurisdiction to review the reasons or bases contained in decisions of the Board, not the medical analysis proffered in VA medical opinions.

The Board denied *direct service connection* after finding that Mr. Stefl had no complaints or diagnosis of nasal problems during service and because there is no medical evidence of record of a nexus between his in-service exposure to Agent Orange and his current nasal disease.  R. at 10-11.  Based on the Board's factual findings and the medical conclusions of the May 2003 VA examination,

I would affirm the Board's decision to deny Mr. Stefl service connection for a nasal sinus disease on a direct basis.