﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/20 Archive Date: 10/30/20

DOCKET NO. 190909-29662
DATE: October 30, 2020

ORDER

Service connection for osteoarthritis of the left hip, status post (s/p) total left hip replacement is granted.

Service connection for osteoarthritis of the right hip, s/p total right hip replacement is granted.

FINDINGS OF FACT

1. The Veteran’s osteoarthritis of the left hip, s/p total left hip replacement is secondary to his service-connected lumbar spine degenerative disc disorder (DDD). 

2. The Veteran’s osteoarthritis of the right hip, s/p total right hip replacement is secondary to his service-connected lumbar spine DDD.

CONCLUSIONS OF LAW

1. The criteria for service connection for osteoarthritis of the left hip, s/p total left hip replacement are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

2. The criteria for service connection for osteoarthritis of the right hip, s/p total right hip replacement are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from February 1968 to August 1991. 

This matter is before the Board of Veteran’s Appeals (Board) on appeal from a March 2019 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). The rating decision on appeal was issued in March 2019 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies.

In the September 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the appellant elected the Evidence Submission option; therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction decision on appeal, as well as any evidence submitted by the Veteran or his representative with the VA Form 10182 or within 90 days of receipt of the VA Form 10182. 38 C.F.R. § 20.303.

Service Connection

The Veteran is only asserting that he is entitled to secondary service connection for his left and right hip conditions, claiming they are caused or aggravated by his lumbar spine DDD. The Veteran, his representative, and the record raise no other theory of service connection. As a result, the Board will limit its analysis to the theory advanced by the Veteran. Robinson v. Peake, 21 Vet. App. 545, 552-56 (2008).

Service connection may also be granted for a disability that is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran seeks service connection for osteoarthritis of the left hip, s/p total left and right hip replacements as secondary to his lumbar spine DDD.

The first element of secondary service connection requires evidence of a current disorder. Here, a current diagnosis has been established. According to the obtained files, the Veteran was first diagnosed with osteoarthritis in the left and right hips, as shown by x-ray, during a February 2011 radiologic examination. This diagnosis was confirmed again in a September 2018 Compensation and Pension (C&P) examination. The September 2018 examination also noted a total left hip replacement in March 2018 and a total right hip replacement in June 2018. As such, this meets the first element of service connection: a current disability. 

The second element for secondary service connection requires the Veteran have a current service-connected disability. The Veteran is currently service connected for a lumbar spine DDD and spondylolisthesis (lumbar spine disorder) with an evaluation of 20 percent effective April 14, 2016. As such, the second element of secondary service connection has been met for the left and right hips. 

The final element for entitlement to secondary service connection requires that the non-service-connected disability is either: 1) proximately due to or the result of a service-connected disability; or 2) aggravated beyond its natural progress by a service-connected disability. The Board must determine if the Veteran’s left and right hip disabilities were caused by or aggravated by his service-connected lumbar spine disorder. 

The Veteran submitted a July 2018 letter from Dr. S, the Director of Adult Reconstructive Surgery at the Andrews Institute, that provided a positive link between the deterioration of the lumbar spine and the disabilities in his left and right hips. Dr. S stated that the Veteran was referred to him by Dr. M for chronic left hip pain. At that time the Veteran was complaining of a pain in his groin that had been “on his left side for years” but had worsened in the “past few months.” Dr. S attempted Cortizone injections and physical therapy with no relief. As a result, Dr. S reviewed the Veteran’s medical history with him but also reviewed the Veteran’s VA medical records in addition to the records provided by Dr. M to include x-rays of both hips. This eventually led to the Veteran’s left and right hip replacements in 2018. 

After working with the Veteran and reviewing his records Dr. S opined that, “Mr. Taylor’s bilateral hip osteoarthritis was the direct result of the aggravation of the normal body dynamics and added joint stresses resulting from the VA service connected lumbar L4-5 DDD and spondylolisthesis.” Dr. S cited to a change in the Veteran’s gait and “body dynamics” due to the lumbar spine disorder as the aggravating factors to both the left and right hips. 

Dr. S, as stated above, is a seasoned medical professional that worked with the Veteran regarding his left and right hip disabilities. The report offers a strong analysis of the Veteran’s disabilities from his attending doctor as well as review of the Veteran’s VA medical records and prior records from the previous doctor. He spoke at length with the Veteran about his left and right hip disabilities and provided a specific rationale based on that review. As a result, this letter is afforded significant probative weight. 

The Veteran contends that a March 2016 letter from Dr. G offers another positive link between his lumbar spine disability and the disabilities in the hips. However, this letter is in reference to the Veteran’s lumbar spine injury. In reference to the hips, Dr. G stated, “He is doing okay from his fusion. His leg pain has gotten better with the lumbar L4-5 that shows signs of fusion on the x-ray.” Dr G does not further discuss a connection between the lumbar spine surgery and the relief of pain in the leg. While the letter indicates the lumbar surgery impacted leg pain, it does not actually address nexus between the lumbar spine and hips. As a result, the letter is not competent nexus evidence and is afforded no probative weight on this question. 

In addition to the evidence cited above, the Veteran also submitted, along with his September 2019 NOD, a timeline of events the Veteran created for his hip disabilities, a letter from Dr. Sh and a letter from his wife to support his claim. 

An August 2019 letter from Dr. Sh provided another positive link between the Veteran’s lumbar spine disability and the left and right hip disabilities. Dr. Sh is a Yale medical school graduate who is both a board and residency trained physician with experience as a professor at Case Western Reserve University and as a physician at the Cleveland Clinic. Dr. Sh began by stating that he had the opportunity to examine the Veteran and his medical records. Dr. Sh then stated, “As has been clearly established by multiple medical journals and textbooks, lumbar degenerative joint disease causes more often than not an antalgic gait which puts abnormal pressure and weight bearing forces on the hips bilaterally. The abnormal forces which the hips are consequently subjected to, more often than not, lead to osteoarthritic changes in both hips [and] can easily progress to the need for surgical intervention, including but not limited to total hip replacement. Given all of the above medical history and the absence of any intervening traumas to this Veteran’s hips it is more likely than not that this Veteran’s bilateral hip osteoarthritis is service connected.”

Medical treatise evidence can, in some circumstances, constitute competent medical evidence, especially when combined with an opinion of a medical professional. See Sacks v. West, 11 Vet. App. 314, 317 (1998); 38 C.F.R. § 3.159(a)(1). However, generic information in a medical journal or treatise is normally too general and inconclusive to constitute the sole basis for establishing a medical nexus to a disease or injury. Mattern v. West, 12 Vet. App. 222, 227 (1999); see also Wallin v. West, 11 Vet. App. 509, 514 (1998) (treatise evidence must “not simply provide speculative generic statements not relevant to the Veteran’s claim.”) 

While Dr. Sh cites to medical literature not specific to this Veteran, he does relate the meaning of the texts to the Veteran’s current symptoms and disabilities. The Board finds this opinion probative, as it provided a clear conclusion with supporting data, and reasoned medical explanations connecting the two. Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

In July 2019, the Veteran also submitted a letter of support from his wife who was a Registered Nurse (RN) for over 45 years prior to her retirement approximately 4 years ago. In this letter, his wife states that she has been married to the Veteran for about 50 years and dated for several years prior to marriage. As such, she is confident in stating that the Veteran, prior to his, “24 years of service to his country,” had no back, hip, or knee issues. She stated that the Veteran was an active man throughout their relationship until his retirement from service in 1991. At that time, he was treated for his back issues by a number of private and VA doctors who cited an issue with the L4-5 and S1 regions. As time continued from 2015 through 2019, the Veteran began to experience further issues with his “lower back” and hip areas. She continues by saying his left hip would lock up causing him a great deal of trouble standing up, often taking him 15 to 25 minutes to fully stand from a sitting position. His wife then cites, as Dr. S and Sh have, that the pain in the Veteran’s lumbar spine has, “caused stress and strain on the hips (causing the deterioration of the hips) … This could be attributed to a change in a body center of mass and a change in gait to compensate for the stenosis in the back.” 

The Veteran’s wife, as stated above, is a RN and as such is competent to opine on the medical issues currently facing the Veteran. As his wife, she is also competent to report changes in the Veteran’s observable physical abilities throughout the over 50 years they have been together. The Board sees no reason to doubt her credibility. Her opinion linking the Veteran’s lumbar spine disability and left and right hip disabilities is supported by medical reasoning and supporting data. As a result, this letter is afforded significant probative weight.

Finally, the Veteran submitted an extremely detailed and well written explanation of his current lumbar spine disorder and the extent to which it has impacted his left and right hip disabilities. While the Board recognizes and truly appreciates the Veteran’s discussion, there is no indication from the record that the Veteran is a trained medical professional. While the Veteran is more than competent to discuss his symptoms and the observable effects they have on his body, the Veteran is not competent through training, experience, or expertise to provide a medical explanation linking his lumbar back disability to his left and right hip disabilities. Layno v. Brown, 6 Vet. App. 465, 470 (1994); see Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Thus, his opinion is not probative for the purpose of establishing a nexus.

Additionally, the Veteran’s use of medical literature provides a generic analysis of the disorders as a whole and not an analysis specific to the details of this Veteran’s claim. Wallin; Sacks. As the Veteran is not a trained medical professional, he is not competent to reconcile the generic nature of the articles he provided with the specifics of his claim. As such, the Veteran’s letter is afforded no probative weight for the purposes of this claim. 

The Veteran underwent several C&P examinations for his hips. The examination in November 2014 did not provide an opinion regarding secondary service connection; thus, it is not probative on this question.

In a September 2018 C&P examination, the Veteran had both his left and right hips examined. The examiner opined that the Veteran’s current osteoarthritis in his left and right hips, are “less likely as not (less than 50/50 probability) proximately due to, the result of, or worsened beyond [their] natural progression by [the Veteran’s] low back pain.” The examiner stated that after review of the Veteran’s records and medical literature, the osteoarthritis in the Veteran’s left and right hips were more likely attributed to his age and “body habitus.” In addition, the examiner further stated that there is no established medical nexus between hip and back osteoarthritis, meaning one is “not the cause of the other.” 

The examiner continued by stating that in the letter from Dr. S, he contradicts his own stated diagnosis because the billing diagnosis in the treatment records is for primary osteoarthritis. He also stated that it is in opposition to current medical evidence within recent literature. This examiner then goes on to cite an UpToDate article listing the factors most often attributed to the onset of osteoarthritis. The examiner is competent to cite this literature and apply it to the Veteran’s claim due to her training and education, however she did not draw clear connections between her analysis of the Veteran’s disabilities and the literature cited. 

To reconcile the difference in opinions between the VA examiner and Dr. S, a second C&P examination was given in January 2019. However, this was an addendum opinion and the Veteran was not physically seen. This opinion in its entirety stated that the examiner reviewed the Veteran’s medical records and:

It is less likely than not (less than 50 percent probability) that the Osteoarthritis of the left and right hip is secondary to the lumbar spine DDD and spondylosis. Rationale: There is no medical nexus for the development of osteoarthritis in one joint due to the osteoarthritis in another joint. The left and right hip osteoarthritis is at least as likely as not an age-related change.

There was no specific discussion of the Veteran’s current disabilities nor how they interact together. There was also no rationale provided to indicate why the Veteran’s age was the only factor being attributed to his left and right hip disabilities.

While the 2018 and 2019 C&P examiners provided rationales for their conclusions, neither addressed the private providers’ opinions that the lumbar spine could have caused a gait that added unnecessary and excessive stress to the Veteran’s left and right hips. As the C&P examinations do not give a more probative rationale as to why age and “body habitus” are a more likely cause for the left and right hip disabilities than the lumbar spine, these examinations are only afforded some probative weight.

The Veteran submitted several letters from doctors who have had a chance to examine and work with him. Dr. S and Dr. Sh stated that they reviewed the Veteran’s medical files prior to making their positive link determination. Additionally, the Veteran’s wife of about 50 years gave both a personal and medical insight into the Veteran’s disabilities. All three medical professionals agree that the Veteran’s left and right hip osteoarthritis is a result of the antalgic gait he developed due to his lumbar spine disability. The antalgic gait added unnecessary and excess stress to the Veteran’s hips and eventually led to an osteoarthritis diagnosis in February 2011. As the September 2018 and the January 2019 examiners did not provide a more probative rationale for the Veteran’s left and right hip disabilities, the Board will resolve all doubt in favor of the Veteran. 

(Continued on the next page)

 

Accordingly, the Board finds that service connection for the left hip and right hip disabilities are secondary to the Veteran’s service-connected lumbar spine disability, and service connection is granted.

 

 

LAURA E. COLLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Conti, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.